William David PHILLIPS; William E. McKinney; J.C. Simpson; Lawrence F. Lovato; Harold Atkins, Individually and as representatives of a class of plaintiffs similarly situated, Plaintiffs–Appellees,

v.

Herbert R. BEBBER; Edward W. Erkel; B.B. Scarborough; Walker Kellog; John Litzler; Lawrence Wagner, as trustees of the Trailways Lines, Inc.—Trailways, Inc. Joint Council, A.T.U. Retirement and Disability Plan, and Walker Kellog, John Litzler, Lawrence Wagner, William Ginn, James D. Wood and William Dize, Jr., as trustees of the Trailways Lines, Inc.—Trailways, Inc. Joint Council, U.T.U. Retirement and Disability Plan, Defendants–Appellants,

Pension Benefit Guaranty Corp., Amicus Curiae,

and

Greyhound Lines, Inc.; Jerry M. Hatalla; Jim Cushing Murray; Rafael Rivera; Edward Strait; Robert M. Tucker; Smith Williamson; Kevin Bolton; J. Michael Doyle; P. Anthony Lannie; Judy Collins; L.L. Petrie; Robert Tancos, as trustees of GLI–A.T.U. Mirror Image Trailways Lines, Inc.—Trail-

ways, Inc. Joint Council A.T.U. Retirement and Disability Plan and GLI–U. T.U. Mirror Image Trailways Lines, Inc.—United Transportation Union and Disability Plan; Ernest L. Jones, Defendants.

William David PHILLIPS; William E. McKinney; J.C. Simpson; Lawrence F. Lovato; Harold Atkins, Individually and as representatives of a class of plaintiffs similarly situated, Plaintiffs–Appellees,

v.

GREYHOUND LINES, INC.,
Defendant–Appellant,

Pension Benefit Guaranty Corp.,
Amicus Curiae,

and

Herbert R. Bebber; Edward W. Erkel; B.B. Scarborough; Walker Kellog; John Litzler, Lawrence Wagner, as trustees of the Trailways Lines, Inc.—Trailways, Inc. Joint Council, A.T.U. Retirement and Disability Plan, and Walker Kellog, John Litzler, Lawrence Wanger, William Ginn, James D. Wood and William Dize, Jr., as trustees of the Trailways Lines, Inc.—Trailways, Inc. Joint Council, U.T.U. Retirement and Disability Plan; Jerry M. Hatalla; Jim Cushing Murray; Rafael Rivera; Edward Strait; Robert M. Tucker; Smith Williamson; Kevin Bolton; J. Michael Doyle; P. Anthony Lannie; Judy Collins; L.L. Petrie; Robert Tancos, as trustees of GLI–A.T.U. Mirror Image Trailways Lines, Inc.—Trailways, Inc. Joint Council A.T.U. Retirement and Disability Plan and GLI–U.T.U. Mirror Image Trailways Lines, Inc.—United Transportation Union and Disability Plan; Ernest L. Jones, Defendants.

Nos. 89–2184, 89–2189.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1990.

Decided Sept. 11, 1990.

As Amended Oct. 25, 1990.

Richard Witte Alexander, Johnson & Gibbs, Austin, Tex., argued (James M. Shoemaker, Jr., Wyche, Burgess, Freeman & Parham, Greenville, S.C., on brief), for appellants.

Kenton Hambrick, Pension Benefit Guar. Corp., argued (Carol Connor Flowe, Gen. Counsel, Jeanne K. Beck, Deputy Gen. Counsel, Israel Goldowitz, Asst. Gen. Counsel, and Gennice D. Brickhouse, Pension Benefit Guar. Corp., on brief), Washington, D.C., for amicus curiae.

J. Kendall Few, argued (James R. Gilreath, Barney O. Smith, Jr. and B. Joel Stoudenmire, on brief), Greenville, S.C., for appellees.

Before RUSSELL and SPROUSE, Circuit Judges, and DUPREE, Senior United States District Judge for the Eastern District of North Carolina, sitting by designation.

PER CURIAM:

■ This case presents one important issue: whether strict compliance with the terms and procedures set forth in Title IV of ERISA, 29 U.S.C. §§ 1301 *et seq.*, is a prerequisite to the termination of an employee retirement and disability benefit plan. Because we find that strict compliance is mandated by the statute, the cause is hereby remanded to the district court with instructions to terminate the plans that are the subject of this litigation in accordance with ERISA.

### I.

The salient facts are undisputed. In July of 1987, Trailways Lines, Inc. ceased operations. At that time, Trailways sold the bulk of its assets to Greyhound, and all employees were terminated. Upon termination, all of the Trailways employees were offered jobs by Greyhound and substantially all accepted. At the time Trailways ceased doing business, its employees were the beneficiaries of two retirement plans, the ATU Retirement and Disability Plan and the UTU Retirement and Disability Plan. These separate plans, containing identical provisions, were adopted for the two unions representing Trailways employees.

In November of 1987, the trustees of the UTU plan convened and adopted a resolution terminating that plan. The resolution provided in pertinent part:

Pursuant to Section 8.1 of the Plan, this Plan shall terminate in the event of the dissolution, merger, consolidation or reorganization of the TRAILWAYS LINES, INC. (hereinafter referred to as the "COMPANY"). The COMPANY ceased active conduct of its business on approximately July 14, 1987, and is currently under involuntary reorganization. IT IS THEREFORE RESOLVED that following the adoption of any necessary Plan amendments, the Plan shall be terminated at the earliest date permitted by law, subject only to compliance with all statutory or regulatory requirements for defined pension plan termination.

It is further resolved that all participants who were employed by the Company when it ceased active conduct of its business (on or about July 14, 1987) shall become fully vested in their accrued benefits to the extent funded.

IT IS FURTHER RESOLVED that the appropriate agents of the Trustees shall be, and hereby are, authorized, empowered and directed to prepare an amendment reflecting the termination of the Plan and to take other further action as may be necessary or appropriate to effectuate the termination of the Plan and to carry out the purposes and intent of these Resolutions.

(Emphasis added.)

In August of 1988, William Phillips, representing a subclass of plaintiffs who, after being terminated by Trailways, did not go to work for Greyhound, commenced this action seeking complete termination of the ATU plan and the UTU plan. Phillips sought a judicial determination that the plans had in fact been dissolved and that the participants were entitled to a distribution of the assets. Greyhound filed an Answer and Counterclaim alleging that Trailways had not dissolved, merged, consolidated or reorganized as of August 1988 and therefore, pursuant to the plain language of the plans, they could not be terminated.

Thereafter, William E. McKinney moved the court to intervene as a representative of an interested subclass of ATU plan participants still employed by Greyhound. In addition, plaintiffs J.C. Simpson and Lawrence F. Lovato moved to intervene as representatives of Trailways UTU Plan participants no longer employed by Greyhound, and plaintiff Harold Adkins moved to intervene as a representative of the UTU Plan participants still employed by Greyhound. Plaintiffs then jointly moved to amend the complaint by alleging class allegations, by including the UTU Plan and by alleging a

partial termination of both Plans pursuant to Section 9.2 of the ATU Plan and Section 8.2 of the UTU Plan.

In May of 1989, the district court entered an order directing that this case proceed as a class action, with four subclasses of former Trailways employees proceeding independently. At the time of the certification, the assets in both the ATU and UTU plans had been transferred to "mirror plans." This was the first phase of a two-phase process designed by the plan trustees to expedite distribution of the plan's assets, and to separate those assets from the Trailways bankruptcy proceeding.

Both the plaintiffs and the defendants moved the district court for summary judgment on one narrow issue: whether the two plans had terminated by force of their own provisions. The court held that, as a matter of law, both plans had terminated in November of 1987. Accordingly, an order granting summary judgment in favor of the plaintiffs was entered. The court, however, retained jurisdiction to oversee the dissolution of the plans and the accounting of assets. This appeal followed.

## II.

■ Both the ATU and UTU plan documents provide for termination of those plans upon the occurrence of certain events. They provide that:

In the event of the dissolution, merger, consolidation or reorganization of the Company (Trailways) the plan shall terminate and the trust fund shall be liquidated unless the plan is continued by a successor in accordance with [Section 8.1 of the ATU plan and Section 7.1 of the UTU plan].

Those sections above mentioned provide:

In the event of the dissolution, merger, consolidation or reorganization of the Employer (Trailways) provision may be made by which the plan and trust will be continued by the successor; and in that event such successor shall be substituted for the Employer under the plan. The substitution of the successor for the Employer shall constitute an assumption of the plan liabilities by the successor, and the successor shall have all of the pow-

ers, duties and responsibilities of the Employer under the plan.

Clearly, it was the intent of the plan drafters to provide a smooth mechanism through which to dissolve the plans and distribute the assets. Unfortunately, these plans are subject to the provisions of ERISA, and specifically Title IV, § 4041(a)(1), 29 U.S.C. § 1341(a), which provides that:

(a) **General Rules Governing Single–Employer Plan Terminations.—**

(1) Exclusive means of plan termination. —Except in the case of a termination for which proceedings are otherwise instituted by the corporation as provided in section 4042, a single-employer plan may be terminated only in a standard termination under subsection (b) or a distress termination under subsection (c).

(2) 60–day notice of intent to terminate. —Not less than 60 days before the proposed termination date of a standard termination under subsection (b) or a distress termination under subsection (c), the plan administrator shall provide to each affected party (other than the corporation in the case of a standard termination) a written notice of intent to terminate stating that such termination is intended and the proposed termination date. The written notice shall include any related additional information required by regulations of the corporation.

29 U.S.C. § 1341(a) (1988).

The district court, while recognizing the requirements of § 1341, found that the plans had, in 1987, terminated as a matter of law, without strict compliance.[*] We find, however, that strict compliance with the statute is the sole means by which a pension plan subject to the provisions of ERISA may be terminated. This finding squares with the clear language and plain meaning of the statute as drafted and is therefore in accord with the intent of the drafters of the statute. *See* H.R.Rep. No. 300, 99th Cong., 2nd *Sess.* 289, *reported in* 1986 U.S.Code Cong. & Admin.News 42, 756, 940.

Accordingly, we remand this case and order that the plans be terminated in conformity with the procedures set forth in ERISA.

---

[*] It is undisputed that the trustees have not, to this date, complied with ERISA.

REVERSED AND REMANDED WITH INSTRUCTIONS.